IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ANTHONY B. HARMON | § | |
| REG. NO. 22689-179 | § | |
| V. | § | C.A. NO. C-04-423 |
| | § | |
| BROOKS COUNTY, ET AL. | § | |

**MEMORANDUM AND RECOMMENDATION**
**ON DEFENDANTS' CORRECTED MOTION FOR SUMMARY JUDGMENT**

This is a civil rights action brought by a federal prisoner pursuant to 42 U.S.C. § 1983,

asserting an Eighth Amendment claim against LCS-Brooks, a correctional facility, LCS Service

Co., Inc.,  and two correctional officers, Sergeant Enrique Cantu and Officer Keoki Guerra.

Defendants move for summary judgment to dismiss plaintiff's action.  Plaintiff has failed to file a

response in opposition.  For the reasons stated herein, it is respectfully recommended that

defendants' motion for summary judgment be granted, and that plaintiff's claims dismissed be for

failure to exhaust, or alternatively, on the merits.

**JURISDICTION**

The Court has federal question jurisdiction over this civil rights action pursuant to 28

U.S.C. § 1331.

**BACKGROUND AND PLAINTIFF'S ALLEGATIONS**

Plaintiff is presently incarcerated at the United States Penitentiary in Jonesville, Virginia.

In his *pro se* complaint, DE #1, and amended complaint, DE #6, plaintiff complains that, while he

was in the custody of LCS-Brooks,[1] defendants were deliberately indifferent to his health and safety.[2]

In particular, plaintiff alleges that on October 6, 2003, he was shackled with leg irons, a waist belt, and handcuffs, and loaded into a van to be transported to the United States Courthouse in Laredo, Texas for a federal court appearance.  Plaintiff claims that he asked correctional officers Enrique Cantu and Keoki Guerra to fasten his seatbelt before departing for the courthouse, but that they ignored his request.  He claims that Sgt. Cantu then proceeded to drive at a high rate of speed, up to 70 to 75 miles per hour.  When they got to Laredo, Sgt. Cantu ran off the road to avoid hitting a truck, drove through a fence, and hit a telephone pole.  Plaintiff was thrown from his seat into the back of the bench seat in front of him, hitting his chin.  Following the accident, Sgt. Cantu drove after the truck that he believed was responsible for the accident, pulled it over, and began yelling at the truck driver.  The Laredo police were called concerning that accident.

Plaintiff claims that neither Sgt. Cantu nor Officer Guerra administered first aid to him, and that Sgt. Cantu attempted to bribe him with a hamburger to not discuss the accident.  He further claims that he continues to suffer from headaches, neck pain, loss of sleep, dizziness, and nightmares as a result of the accident.

---

[1] Plaintiff named Brooks County Correctional Center as the defendant, but it is now known as LCS Brooks.

[2] In his amended complaint, plaintiff abandoned an earlier claim for injunctive relief, and also named the unidentified correctional officer as a defendant.

## SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS

In support of their motion for summary judgment, defendants offer the following evidence:

Ex. A:  Defendants' first amended original answer;

Ex. B:  Affidavit of Enrique Cantu;

Ex. C:  Laredo police report dated October 6, 2003;

Ex. D:  Affidavit of Warden Miguel Niderhauser, with copies of plaintiff's inmate grievances filed while at LCS-Brooks; and

Ex. E:  Supplemental Affidavit of Miguel Niderhauser with an attached copy of "Inmate Rules & Regulations for the Brooks County Detention Center."

The following facts are not in dispute:

Sgt. Cantu was the driver of the LCS-Brooks van on October 6, 2003, and he was charged with transporting plaintiff from LCS-Brooks to the federal courthouse in Laredo.  Cantu Aff. at ¶ 2. For the trip, plaintiff was shackled with leg irons and handcuffs, and placed in the back of the van, which is separated from the front by a metal screen.  Id.

As Sgt. Cantu neared Laredo, an 18-wheeler entered the freeway into the left hand lane in which the van was traveling.  Cantu Aff. at ¶ 2.  Sgt. Cantu began to switch to the right lane, but as he did, the 18-wheeler alswo changed to the right lane.  Id.  Sgt. Cantu could not return to the left hand lane, so he slowed down to let the 18-wheeler pass.  Despite these efforts, he was forced to drive on the shoulder of the road, and finally, off the road altogether to avoid hitting the 18-wheeler.  Id.

The van struck a hurricane fence off the right side of the road.  Cantu Aff. at ¶ 3.  The collision with the fence did not stop the van.  Id.  Nonetheless, Sgt. Cantu testified that the collision was not severe.  Id.

3

Because the 18-wheeler did not stop, Sgt. Cantu, with plaintiff and Officer Guerra in the van, pursued the 18-wheeler and convinced the driver to stop.  Cantu Aff. at ¶ 4.  It was not necessary for Cantu to drive over 75 miles an hour to flag down the 18-wheeler, and Sgt. Cantu did not believe his pursuit to be unlawful or dangerous.  Id.  Officer Guerra was not involved with Sgt. Cantu's decision to chase the 18-wheeler.  Id.

Sgt. Cantu asked plaintiff if he was hurt, and plaintiff indicated he was not.  Cantu Aff. at ¶ 5.  Indeed, Sgt. Cantu heard plaintiff tell a Laredo police officer that he was not hurt.  Id. at ¶ 6.  After the Laredo police investigated the matter, plaintiff was taken to the Laredo Federal Courthouse for a hearing.  Id. at ¶ 7.  After the hearing, Sgt. Cantu transported plaintiff back to LCS-Brooks.  Id.

Neither Sgt. Cantu nor the driver of the 18-wheeler was cited for the accident.  Ex. C, Laredo police report.  According to the police report, plaintiff was wearing his seat belt and shoulder strap at the time of the accident and he told the officer he was not injured.  Ex. C.

Plaintiff was seen by medical staff on October 7, 2003.  Niderhauser Aff. (attached medical records) at  35.  Plaintiff was prescribed Motrin, a soft-food diet, and x-rays were ordered.  Id.

On October 8, 2003, plaintiff was seen by Dr. Logan at LCS-Brooks for evaluation following the van accident.  Niderhauser Aff.  at 37.  Plaintiff told Dr. Logan that he had hit his chin. Id.  He complained of pain in both mandibles, and that he could not open his mouth fully.  Id.  Upon examination, Dr. Logan noted no swelling, and that plaintiff's medical history was positive for temporomandibular joint pain ("TMJ").  Id.  Dr. Logan's diagnosis was that plaintiff had a contusion to his jaw, but he affirmed the x-ray order and continued plaintiff on Motrin.  Id.

4

On October 10, 2003, plaintiff was taken to Spohn Hospital in Falfurrias for x-rays. Id. at 50. Multiple views of the mandible and lateral views of the temporomandibular joints were obtained with open and close mouth positions. Id. No fracture or dislocation or lytic process was identified. Id. An open mouth view showed there was normal translation of the mandibular head. Id.

On October 13, 2003, plaintiff was seen by Dr. Mance Cutbirth at Corpus Christi Oral and Maxillofacial Surgeons for an evaluation of pain in his jaw. Niderhauser Aff. at 54-55. Dr. Cutbirth prescribed Cayuoflum for plaintiff's jaw pain. Id.

On October 20, 2003, plaintiff complained to the LCS-Brooks medical staff that he no longer wanted to be on a soft-food diet because he was only receiving tuna. Niderhauser Aff. at 38. The medical employee noted that plaintiff had no difficulty with his speech or with opening his mouth, and he advised plaintiff that he could receive a regular food tray and mash the food if necessary. Id. Plaintiff also complained that he had submitted grievances to medical that had not been answered. Id. The medical employee stated that all grievances that were received had been processed, and he advised plaintiff to submit the grievances directly to medical staff personnel as they were on his floor daily. Id.

On October 21, 2003, B. Paetz, an L.V.N., investigated plaintiff's complaint that he could not eat food. Id. at 39. Nurse Paetz noted that she observed plaintiff laughing and talking to a peer, but when he saw her, he pursed his lips together. Id. Nurse Paetz notified Dr. Logan of her findings, and Dr. Logan discontinued plaintiff's soft food diet. Id. Nurse Paetz informed plaintiff that he would be returned to a regular diet and advised him to cut his food into small pieces. Id.

Dr. Logan examined plaintiff on October 29, 2003.  Id. at 43.  Plaintiff stated that his jaw was feeling much better, but he complained of pain in his hips and elbows.  Id.  Dr. Logan ordered a urine test and continued plaintiff on Motrin.  Id.

On November 4, 2003, plaintiff sent a sick call request complaining of headaches, earaches, and that his jaw was popping.  Id. at 44.  He also cmplained that the Motrin did not help enough with his pain.  Id.  On November 7, 2003, Nurse Paetz observed plaintiff talking with his cell-mate without any difficulty.  Id.  She told plaintiff that she had seen him interacting and sleeping without difficulty, and that he did not demonstrate significant pain symptoms.  Id.  She advised him that he could be placed in the medical unit for closer observation, but that he would not receive recreation if placed on the medical floor.  Id.  Plaintiff declined to be placed on the medical floor, and agreed to continue with the 800 milligrams of Motrin.  Id.

Since February 2001, LCS-Brooks has had an inmate grievance procedure in place. Niderhauser Aff. at ¶ 4; Supplemental Aff., attachment.  Plaintiff did not file an inmate grievance concerning the October 6, 2003 incident.  Id.  Plaintiff filed grievances at LCS-Brooks concerning other matters.  Niderhauser Aff. at attached 1-4, 8.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings,

depositions, affidavits and admissions on file, and drawing all justifiable inferences in favor of the party opposing the motions. Caboni v. Gen. Motors Corp., 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence or evaluate the credibility of witnesses. See id. Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein." FED. R. CIV. P. 56(e); see also Cormier v. Pennzoil Exploration & Prod. Co., 969 F.2d 1559 (5th Cir. 1992) (refusing to consider affidavits that relied on hearsay statements); Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987) (stating that courts cannot consider hearsay evidence in affidavits and depositions). Unauthenticated and unverified documents do not constitute proper summary judgment evidence. King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings. FED. R. CIV. P. 56(e); Anderson, 477 U.S. at 248-49. "After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." Caboni, 278 F.3d at 451. "If reasonable minds could differ as to the import of the evidence . . . a verdict should not be directed." Anderson, 477 U.S. at 250-51.

## DISCUSSION

The evidence must be evaluated under the summary judgment standard to determine whether the moving party has shown the absence of a genuine issue of material fact.  "[T]he substantive law will identify which facts are material.  Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  Anderson, 477 U.S. at 248.

**A.      Exhaustion.**

Defendants raise the affirmative defense that plaintiff has failed to exhaust his administrative remedies such that his case is subject to dismissal.

Pursuant to 42 U.S.C. § 1997e(a),  "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  A prisoner must exhaust administrative remedies for lawsuits "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."  Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328 (5th Cir. 2002).  Exhaustion applies regardless whether the prisoner may obtain the type of relief sought in the state's administrative process.  Booth v. Churner, 532 U.S. 731, 734 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).

The purpose of the exhaustion requirement is to alert jail officials of problems so that they have a chance to address the claims before they reach federal court.  Curry v. Scott, 249 F.3d 493, 505 (6th Cir. 2001).  As acknowledged by the Supreme Court, Congress intended the administrative process to "filter out some frivolous claims and foster better-prepared litigation

once a dispute did move to the courtroom, even absent formal factfinding." Booth, 532 U.S. at 737.

The undisputed summary judgment evidence establishes that: (1) LCS-Brooks has an inmate grievance process; (2) the LCS-Brooks' grievance process has been in existence since September 2001; (3) plaintiff was aware of the grievance system and had filed grievances while at LCS-Brooks; and (4) plaintiff did not file a grievance concerning the October 6, 2003 incident.

The exhaustion requirement may be excused when it administrative remedies are not "personally available." Days v. Johnson, 322 F.3d 863, 867 (5th Cir. 2003). "Availability" is a question of law for the court to decide. Brown v. Croak, 312 F.3d 109, 111 (3d Cir. 2002). The Fifth Circuit has applied the ordinary dictionary definition of "'available' as, among other things, 'immediately utilizable,' and 'that is accessible or may be obtained: personally obtainable.'" Days, 322 F.3d at 867 (quoting WEBSTER'S NEW INT'L DICTIONARY 150 (3rd ed. 1981)); Underwood v. Wilson, 151 F.3d 292, 295 (5th Cir. 1998) (same). A remedy is not "personally available" when a prisoner's physical injury prevents him from temporarily using it and when a subsequent filing is rejected as untimely. Days, 322 F.3d at 867; but see Ferrington v. La. Dep't of Corr., 315 F.3d 529 (5th Cir. 2002) (finding that inmate's blindness had not prevented him from filing other pleadings, so his blindness did not render the grievance procedure unavailable).

The undisputed facts establish that administrative remedies were available to plaintiff. He offers no explanation as to why he did not pursue those remedies. Moreover, there is nothing in the record to suggest that exhaustion would have been futile, or that the grievance system was unavailable to plaintiff due to illness or any other reason. Plaintiff failed to exhaust his administrative remedies.

The Fifth Circuit has affirmed a district court's dismissal for lack of exhaustion with prejudice to the inmate being able to re-file the action and proceed as a pauper. Underwood, 151 F.3d at 296. Accordingly, it is respectfully recommended that plaintiff's action be dismissed with prejudice to proceeding as a pauper should he decide to re-file his claims after he exhausts the prisoner grievance process.

### B.     Deliberate indifference.

In the alternative, should the Court reach the merits of plaintiff's claims, it is recommended that defendants' motion for summary judgment be granted and that plaintiff's Eighth Amendment claims be dismissed with prejudice.

Two requirements must be met in order for a prison official to be held liable under the Eighth Amendment for denying humane conditions of confinement. "First, there is an objective requirement that the condition must be so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need." Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995) (quotation marks omitted). In evaluating conditions of confinement, the totality of the circumstances of the inmate's confinement, including the duration of the circumstances, must be considered. Palmer v. Johnson, 193 F.3d 346, 353 (5th Cir. 1999).

Second, a subjective requirement establishes that it be determined whether the prison official was deliberately indifferent to an inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1970). "Deliberate indifference describes a state of mind more blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." Farmer, 511 U.S. at 835 (construing Estelle v. Gamble, 429 U.S. 97, 104 (1976)). To act with deliberate indifference, a prison official must both know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could

10

be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 837.

Plaintiff argues that LCS-Brooks and LCS Service failed to train its officers regarding proper transportation procedures and first aid. Plaintiff is suing Sgt. Cantu alleging that he was deliberately indifferent to his health and safety when he failed to fasten plaintiff's seat belt, drove at an unsafe speed, failed to provide medical attention after the accident, and then attempted to bribe plaintiff. Plaintiff further claims that Officer Guerra was deliberately indifferent because he failed to fasten plaintiff's seat belt or to provide medical treatment following the accident.

According to the Laredo police report, plaintiff was secured by both a seat belt and shoulder strap. Ex. C at 2. In addition, plaintiff denied any injury following the accident. Id. In fact, following the accident, plaintiff attended his federal court appearance. Cantu Aff. at ¶ 7. There is no record of plaintiff complaining of injury until the following day. Niderhauser Aff. at 35. Plaintiff was seen by medical staff for several days beginning on October 7, 2003, and was prescribed Motrin, a soft-food diet, and x-rays. Id.

Plaintiff's allegations of failure to train, and denial of medical care are solely refuted by the uncontroverted summary judgment evidence. As to plaintiff's claim that Sgt. Cantu tried to bribe him with a hamburger to not talk about the accident, plaintiff's conclusory allegations will not support this claim. Finally, plaintiff's allegation that Sgt. Cantu and Officer Guerra "conspired" in the events leading to and after the accident, is unsubstantiated and frivolous. Thus, defendants are entitled to summary judgment dismissing with prejudice plaintiff's claims.

## **RECOMMENDATION**

For the foregoing reasons, it is respectfully recommended that the Court grant defendants' motion for summary judgment and dismiss plaintiff's action for failure to exhaust administrative remedies with prejudice to plaintiff proceeding as a pauper should he re-file this action.

In the alternative, it is recommended that the Court grant defendants' motion for summary judgment and dismiss with prejudice plaintiff's claims.

Respectfully submitted this 31st day of May 2005.


_____
BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to FED. R. CIV. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 2001-6, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).