IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ANTHONY B. HARMON | § | |
|     REG. NO. 22689-179 | § | |
| V. | § | C.A. NO. C-04-423 |
| | § | |
| BROOKS COUNTY, ET AL. | § | |

**AMENDED MEMORANDUM AND RECOMMENDATION
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This is a civil rights action brought by a former federal prisoner[1] pursuant to

42 U.S.C. § 1983.  Defendants move for summary judgment to dismiss plaintiff's

action.  (D.E. 56).  Plaintiff has failed to file a response in opposition.  For the

reasons stated herein, it is respectfully recommended that defendants' motion for

summary judgment be granted, and that plaintiff's claims be dismissed  for failure

to exhaust, or alternatively, on the merits.[2]

## I. JURISDICTION

The Court has federal question jurisdiction over this civil rights action

pursuant to 28 U.S.C. § 1331.

---

[1] Plaintiff was in federal custody at the time he filed suit, but has since been released.

[2] The undersigned magistrate judge previously entered a Memorandum and Recommendation
to grant defendants' motion for summary judgment.  See (D.E. 59).  This amended recommendation
supplants and replaces the original memorandum and recommendation.

## II. **BACKGROUND AND PLAINTIFF'S ALLEGATIONS**

Plaintiff filed suit on August 9, 2004, complaining that defendants were deliberately indifferent to his health and safety in violation of his Eighth Amendment rights. Plaintiff named as defendants LCS-Brooks, a correctional facility, LCS Service Co., Inc., and two correctional officers, Sergeant Enrique Cantu and Officer Keoki Guerra. A Spears[3] hearing was held on September 16, 2004. (D.E. 13). Following the hearing, the case was retained and service ordered on defendants. Plaintiff seeks damages for his pain and suffering and medical expenses.

## III. **SUMMARY JUDGMENT EVIDENCE AND UNCONTESTED FACTS**

Plaintiff testified to the following facts at the Spears hearing, or in his original complaint, (D.E. 1), and first amended complaint, and are not in dispute:

On October 6, 2003, plaintiff was shackled with leg irons, waist belt, and handcuffs, and loaded into a van to be transported to the United States Courthouse in Laredo, Texas, for a federal court appearance. Plaintiff asked correctional officers Enrique Cantu to fasten his seatbelt before departing for the courthouse, but he refused. Officer Guerra heard the exchange, but did not buckle plaintiff's

---

[3] Spears v. McCotter, 766 F.2d 179 (5th Cir. 1985).

seatbelt.  Sergeant Cantu proceeded to drive at a high rate of speed, over 55 miles per hour and up to 80 miles per hour.  Plaintiff was able to see the speedometer.

As they entered the Laredo city limits, the van almost hit a truck that had pulled in front of it.  To avoid hitting the truck, Sergeant Cantu drove off the road.  The van then went through a fence and hit a telephone pole, but the van did not stop.  Plaintiff was thrown from his seat into the back of the bench seat in front of him, hitting his chin.  Sergeant Cantu drove after the truck that he believed was responsible for the accident, pulled it over, and began yelling at the truck driver.  Sergeant Cantu called the Laredo police to report the accident.

After the accident, plaintiff's lip was cut and swollen, he felt nauseated, and he needed to use the restroom because he "lost control of his bodily functions."  Sergeant Cantu refused plaintiff's request to go to the hospital, but instead, drove to the federal courthouse for plaintiff's scheduled hearing.  Sergeant Cantu told plaintiff not to tell the police or anyone else about the accident, and even tried to bribe him with a hamburger.  At federal court, plaintiff told two United States Marshals about the accident and that he was hurt, but they told him that he was in the custody of Brooks County and that he would have to seek help with that entity.  Plaintiff was transported back to LCS-Brooks.

The following additional facts are not contested:

Neither Sergeant Cantu nor the driver of the 18-wheeler was cited for the accident.  DSJ [4] Exh. C, Laredo police report.  The Laredo police report indicates that  plaintiff was wearing his seat belt and shoulder strap at the time of the accident.  Id.

Plaintiff was seen by medical staff on October 7, 2003.  DSJ Ex. D, plaintiff's medical records, at 35.  Plaintiff was prescribed Motrin, a soft-food diet, and x-rays were ordered.  Id.

On October 8, 2003, plaintiff was seen by Dr. Logan at LCS-Brooks for evaluation.  DSJ Ex. D at 37.  Plaintiff told Dr. Logan that he had hit his chin.  Id. He complained of pain in both mandibles, and that he could not open his mouth fully.  Id.  Upon examination, Dr. Logan noted no swelling, and that plaintiff's medical history was positive for temporomandibular joint pain ("TMJ").  Id.  Dr. Logan's diagnosis was contusion to the jaw, but he affirmed the x-ray order.  Id.

On October 10, 2003, plaintiff was taken to Spohn Hospital in Falfurrias for x-rays.  DSJ Ex. D at 50.  Multiple views of the mandible and lateral views of the temporomandibular joints were obtained with open and close mouth positions.  Id. No fracture or dislocation or lytic process was identified.  Id.  An open mouth view showed there was normal translation of the mandibular head.  Id.

---

[4] "DSJ" refers to defendants' corrected motion for summary judgment.  (D.E. 56).

4

On October 13, 2003, plaintiff was seen by Dr. Mance Cutbirth at Corpus Christi Oral and Maxillofacial Surgeons for evaluation of jaw pain.  DSJ Ex. D at 54-55.  Dr. Cutbirth prescribed  Cayuoflum for plaintiff's jaw pain.  Id.

On October 20, 2003, plaintiff complained to the LCS-Brooks medical staff that he no longer wanted to be on a soft-food diet because he was only receiving tuna.  DSJ Ex. D at 38.  The medical employee noted that plaintiff had no difficulty with his speech or with opening his mouth, and he advised plaintiff that he could receive a regular food tray and mash the food if necessary.  Id.

On October 21, 2003, B. Paetz, an L.V.N., investigated plaintiff's complaint that he could not eat food.  DSJ Ex. D at 39.  Nurse Paetz informed plaintiff that he would be returned to a regular diet and advised him to cut his food into small pieces.  Id.

Dr. Logan examined plaintiff on October 29, 2003.  DSJ Ex. D at 43. Plaintiff stated that his jaw was feeling much better, but he complained of pain in his hips and elbows.  Id.  Dr. Logan ordered a urine test and continued plaintiff on Motrin.  Id.

On November 4, 2003, plaintiff sent a sick call request complaining of headaches, earaches, and that his jaw was popping. DSJ Ex. D at 44.  He also complained that the Motrin did not help enough with his pain.  Id.  On November

5

7, 2003, Nurse Paetz advised plaintiff that he could be placed in the medical unit for closer observation, but that he would not receive recreation if placed on the medical floor.  Id.  Plaintiff declined to be placed on the medical floor, and agreed to continue with the 800 milligrams of Motrin.  Id.

Since February 2001, LCS-Brooks has had an inmate grievance procedure in place.  DSJ Ex. D, Niderhauser Aff. at ¶ 4.  Plaintiff did not file an inmate grievance concerning the October 6, 2003 incident.  Id.  Plaintiff filed grievances at LCS-Brooks concerning other matters.  Id.

## IV.  SUMMARY JUDGMENT STANDARD

Summary judgment is proper if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).  An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The Court must examine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.  In making this determination, the Court must consider the record as a whole by reviewing all pleadings, depositions, affidavits and admissions on file, and drawing all justifiable

inferences in favor of the party opposing the motions.  <u>Caboni v. Gen. Motors Corp.</u>, 278 F.3d 448, 451 (5th Cir. 2002).

The Court may not weigh the evidence or evaluate the credibility of witnesses.  <u>See</u> <u>id.</u>  Furthermore, "affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify on the matters stated therein." FED. R. CIV. P. 56(e); <u>see</u> <u>also</u> <u>Cormier v. Pennzoil Exploration & Prod. Co.</u>, 969 F.2d 1559 (5th Cir. 1992) (refusing to consider affidavits that relied on hearsay statements); <u>Martin v. John W. Stone Oil Distrib., Inc.</u>, 819 F.2d 547, 549 (5th Cir. 1987) (stating that courts cannot consider hearsay evidence in affidavits and depositions).  Unauthenticated and unverified documents do not constitute proper summary judgment evidence.  <u>King v. Dogan</u>, 31 F.3d 344, 346 (5th Cir. 1994).

The moving party bears the initial burden of showing the absence of a genuine issue of material fact.  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). If the moving party demonstrates an absence of evidence supporting the nonmoving party's case, the burden shifts to the nonmoving party to come forward with specific facts showing that a genuine issue for trial does exist.  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986).  To sustain this burden, the nonmoving party cannot rest on the mere allegations of the pleadings.  FED. R.

7

Cɪᴠ. P. 56(e); <u>Anderson</u>, 477 U.S. at 248-49.  "After the nonmovant has been given

an opportunity to raise a genuine factual issue, if no reasonable juror could find for

the nonmovant, summary judgment will be granted."  <u>Caboni</u>, 278 F.3d at 451.  "If

reasonable minds could differ as to the import of the evidence ... a verdict should

not be directed."  <u>Anderson</u>, 477 U.S. at 250-51.

The evidence must be evaluated under the summary judgment standard to

determine whether the moving party has shown the absence of a genuine issue of

material fact.  "[T]he substantive law will identify which facts are material.  Only

disputes over facts that might affect the outcome of the suit under the governing

law will properly preclude the entry of summary judgment."  <u>Anderson</u>, 477 U.S. at

248.

## V.  <u>DISCUSSION</u>

### A.    **Exhaustion.**

Defendants raise the affirmative defense that plaintiff has failed to exhaust

his administrative remedies such that his case is subject to dismissal.

Pursuant to 42 U.S.C. § 1997e(a),  "[n]o action shall be brought with respect

to prison conditions under section 1983 ... by a prisoner confined in any jail,

prison, or other correctional facility until such administrative remedies as are

available are exhausted."  A prisoner must exhaust administrative remedies for

lawsuits "about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002); Clifford v. Gibbs, 298 F.3d 328 (5th Cir. 2002). Exhaustion applies regardless whether the prisoner may obtain the type of relief sought in the state's administrative process. Booth v. Churner, 532 U.S. 731, 734 (2001); Wright v. Hollingsworth, 260 F.3d 357, 358 (5th Cir. 2001).

The purpose of the exhaustion requirement is to alert jail officials of problems so that they have a chance to address the claims before they reach federal court. Curry v. Scott, 249 F.3d 493, 505 (6th Cir. 2001). As acknowledged by the Supreme Court, Congress intended the administrative process to "filter out some frivolous claims and foster better-prepared litigation once a dispute did move to the courtroom, even absent formal factfinding." Booth, 532 U.S. at 737.

The undisputed summary judgment evidence establishes that: (1) LCS-Brooks has an inmate grievance process; (2) the LCS-Brooks' grievance process has been in existence since September 2001; (3) plaintiff was aware of the grievance system and had filed grievances while at LCS-Brooks; and (4) plaintiff did not file a grievance concerning the October 6, 2003 incident.

The exhaustion requirement may be excused when its administrative remedies are not "personally available." Days v. Johnson, 322 F.3d 863, 867 (5th

Cir. 2003). "Availability" is a question of law for the court to decide. <u>Brown v. Croak</u>, 312 F.3d 109, 111 (3d Cir. 2002). The Fifth Circuit has applied the ordinary dictionary definition of "'available' as, among other things, 'immediately utilizable,' and 'that is accessible or may be obtained: personally obtainable.'" <u>Days</u>, 322 F.3d at 867 (quoting WEBSTER'S NEW INT'L DICTIONARY 150 (3rd ed.1981)); <u>Underwood v. Wilson</u>, 151 F.3d 292, 295 (5th Cir. 1998) (same). A remedy is not "personally available" when a prisoner's physical injury prevents him from temporarily using it and when a subsequent filing is rejected as untimely. <u>Days</u>, 322 F.3d at 867; <u>but see Ferrington v. La. Dep't of Corr.</u>, 315 F.3d 529 (5th Cir. 2002) (finding that inmate's blindness had not prevented him from filing other pleadings, so his blindness did not render the grievance procedure unavailable).

The undisputed facts establish that administrative remedies were available to plaintiff. He offers no explanation as to why he did not pursue those remedies. Moreover, there is nothing in the record to suggest that exhaustion would have been futile, or that the grievance system was unavailable to plaintiff due to illness or any other reason. Plaintiff failed to exhaust his administrative remedies.

The Fifth Circuit has affirmed a district court's dismissal for lack of exhaustion with prejudice to the inmate being able to re-file the action and proceed as a pauper. <u>Underwood</u>, 151 F.3d at 296. Accordingly, it is respectfully

recommended that plaintiff's action be dismissed with prejudice to proceeding as a pauper should he decide to re-file his claims after he exhausts the prisoner grievance process.

**B.    Deliberate indifference.**

In the alternative, should the Court reach the merits of plaintiff's claims, it is recommended that defendants' motion for summary judgment be granted and that plaintiff's Eighth Amendment claims be dismissed with prejudice.

Two requirements must be met in order for a prison official to be held liable under the Eighth Amendment for denying humane conditions of confinement. "First, there is an objective requirement that the condition must be so serious as to deprive prisoners of the minimal civilized measure of life's necessities, as when it denies the prisoner some basic human need."  Woods v. Edwards, 51 F.3d 577, 581 (5th Cir. 1995) (quotation marks omitted).  In evaluating conditions of confinement, the totality of the circumstances of the inmate's confinement, including the duration of the circumstances, must be considered.  Palmer v. Johnson, 193 F.3d 346, 353 (5th Cir. 1999).

Second, a subjective requirement establishes that it be determined whether the prison official was deliberately indifferent to an inmate's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1970).  "Deliberate indifference describes a

state of mind more blameworthy than negligence;" there must be "more than ordinary lack of due care for the prisoner's interests or safety." <u>Farmer</u>, 511 U.S. at 835 (construing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976)).  To act with deliberate indifference, a prison official must both know of and disregard "an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Id.</u> at 837.

Plaintiff argues that LCS-Brooks and LCS Service failed to train its officers regarding proper transportation procedures and first aid.  Plaintiff is suing Sergeant Cantu alleging that he was deliberately indifferent to his health and safety when he failed to fasten plaintiff's seat belt, drove at an unsafe speed, failed to provide medical attention after the accident, and then attempted to bribe plaintiff.  Plaintiff further claims that Officer Guerra  was deliberately indifferent because he failed to fasten plaintiff's seat belt or to provide medical treatment following the accident.

According to the Laredo police report, plaintiff was secured by both a seat belt and shoulder strap.  DSJ Ex. C at  2.  Moreover, even if Sergeant Cantu failed to buckle plaintiff's seatbelt, such allegations state a claim of negligence at best, which is not actionable.  <u>Domino v. Texas Dep't of Crim. Justice</u>, 239 F.3d 752, 756

(5th Cir. 2001) (allegations of negligence against prison officials fail to state a constitutional violation).

Concerning medical care, plaintiff denied to the police any injury following the accident, and the police did not suggest that plaintiff be taken to the hospital. DSJ Ex. C.  Id.  Plaintiff then attended federal court without incident.  He was seen the following day by medical staff, and, over the next few days, provided with pain medication, a soft-food diet, and seen by a specialist.      DSJ Ex.D.  Defendants' failure to transport plaintiff to the hospital immediately following the accident does not demonstrate deliberate indifference because there is no evidence to suggest that either Sergeant Cantu or Officer Guerra were aware of a serious risk to plaintiff's health and safety and ignored that risk.  Farmer, 511 U.S. at 837.

As to plaintiff's claim that Sergeant Cantu tried to bribe him with a hamburger to not talk about the accident, plaintiff's conclusory allegations will not support this claim. See Freeman v. Texas Dep't of Crim. Justice, 369 F.3d 854 (5th Cir. 2004) (nonmovant cannot satisfy its burden of setting forth specific facts showing a genuine issue for trial with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence).

 Finally, plaintiff's allegation that Sgt. Cantu and Officer Guerra "conspired" in the events leading to and after the accident, is unsubstantiated and frivolous.  At

his <u>Spears</u> hearing, plaintiff testified that he named Officer Guerra as a defendant simply because "he was there," and did nothing to help plaintiff. Such allegations fail to demonstrate deliberate indifference, let alone a conspiracy to commit deliberate indifference.

Plaintiff has failed to establish that a genuine issue of a material fact exists for trial.  Defendants are entitled to summary judgment dismissing with prejudice plaintiff's claims.

## VI.  RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that the Court grant defendants' motion for summary judgment and dismiss plaintiff's action for failure to exhaust administrative remedies with prejudice to plaintiff proceeding as a pauper should he re-file this action.

In the alternative, it is respectfully recommended that the Court grant defendants' motion for summary judgment and dismiss with prejudice plaintiff's claims.

Respectfully submitted this 31st day of August, 2005.


_____

BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

14

<u>NOTICE TO PARTIES</u>

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **TEN (10) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to FED. R. CIV. P. 72(b), 28 U.S.C. § 636(b)(1)(C) and Article IV, General Order No. 2001-6, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within TEN (10) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  <u>Douglass v. United Servs. Auto. Ass'n</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

15